1 | EILEEN M. DECKER
United States Attorney
2 | PATRICK R. FITZGERALD
Assistant United States Attorney
3 | Chief, National Security Division
JAY H. ROBINSON (California Bar No. 230015)
4 | MELANIE SARTORIS (California Bar No. 217560)
DEIRDRE Z. ELIOT (California Bar No. 145007)
5 | Assistant United States Attorneys
Terrorism and Export Crimes Section
6 |    3403 Tenth Street
     Suite 200
7 |    Riverside, California 92501
     Telephone: (951) 276-6267
8 |              (213) 894-5615
               (714) 338-3599
9 |    Facsimile: (951) 276-6202
               (213) 894-7631
10 |             (714) 338-3561
     E-mail:   jay.robinson@usdoj.gov
11 |           melanie.sartoris@usdoj.gov
               deirdre.eliot@usdoj.gov
12 |
13 | Attorneys for Plaintiff
UNITED STATES OF AMERICA
14 |
15 |                 UNITED STATES DISTRICT COURT
16 |            FOR THE CENTRAL DISTRICT OF CALIFORNIA
17 |                       EASTERN DIVISION
18 | UNITED STATES OF AMERICA,          No. CR 15-93-JGB
19 |            Plaintiff,              PLEA AGREEMENT FOR DEFENDANT
                                       ENRIQUE MARQUEZ, JR.
20 |            v.
21 | ENRIQUE MARQUEZ, JR.,
22 |            Defendant.
23 |
24 |     1.    This constitutes the plea agreement between ENRIQUE
25 | MARQUEZ, JR. ("defendant") and the United States Attorney's Office
26 | for the Central District of California (the "USAO") in the above-
27 | captioned case.  This agreement is limited to the USAO and cannot
28 |

1    bind any other federal, state, local, or foreign prosecuting,

2    enforcement, administrative, or regulatory authorities.

3                        DEFENDANT'S OBLIGATIONS

4        2.   Defendant agrees to:

5            a.   At the earliest opportunity requested by the USAO and

6    provided by the Court, appear and plead guilty to Counts One and Two

7    of the Indictment in United States v. Enrique Marquez, Jr., CR No.

8    15-93-JGB, which charge defendant with conspiracy to provide material

9    support to terrorists in violation of 18 U.S.C. § 2339A(a) (Count

10   One), and false statements in connection with the acquisition of a

11   firearm in violation of 18 U.S.C. § 922(a)(6) (Count Two).

12           b.   Not contest facts agreed to in this agreement.

13           c.   Abide by all agreements regarding sentencing contained

14   in this agreement.

15           d.   Appear for all court appearances, surrender as ordered

16   for service of sentence, obey all conditions of any bond, and obey

17   any other ongoing court order in this matter.

18           e.   Not commit any crime; however, offenses that would be

19   excluded for sentencing purposes under United States Sentencing

20   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

21   within the scope of this agreement.

22           f.   Be truthful at all times with Pretrial Services, the

23   United States Probation Office, and the Court.

24           g.   Pay the applicable special assessments at or before

25   the time of sentencing unless defendant lacks the ability to pay and

26   prior to sentencing submits a completed financial statement on a form

27   to be provided by the USAO.

28

THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

     a.   Not contest facts agreed to in this agreement.

     b.   Abide by all agreements regarding sentencing contained in this agreement.

     c.   At the time of sentencing, move to dismiss the remaining counts of the Indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

     d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

NATURE OF THE OFFENSES

4.   Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, conspiracy to provide material support to terrorists, in violation of Title 18, United States Code, Section 2339A(a), the following must be true: (1) beginning on an unknown date and continuing up to and including at least November 2012, there was an agreement between two or more persons to provide material support or resources, including weapons, explosives, and personnel, including themselves; and (2) defendant became a member of the agreement knowing of its object and intending that such support or resources be used in preparation for or in

3

1  carrying out one or more of the following offenses: (a) Title 18,
2  United States Code, Section 844(f)(1), which prohibits using fire or
3  an explosive to damage or destroy any institution or organization
4  receiving Federal financial assistance; or (b) Title 18, United
5  States Code, Section 844(i), which prohibits using fire or an
6  explosive to damage or destroy any building, vehicle, or other real
7  or personal property used in interstate or foreign commerce, or in
8  any activity affecting interstate or foreign commerce.

9          a.   The elements of Title 18, United States Code, Section
10  844(f)(1), use of fire or explosive to damage or destroy any
11  institution or organization receiving federal financial assistance,
12  are: (1) defendant damaged or destroyed any institution or
13  organization receiving federal financial assistance by means of fire
14  or an explosive; (2) defendant did so maliciously; and (3) at the
15  time of the fire or explosion, the institution or organization was
16  receiving federal financial assistance.

17          b.   The elements of Title 18, United States Code, Section
18  844(i), use of fire or explosive to damage or destroy property, are:
19  (1) defendant damaged or destroyed a building, vehicle, or other real
20  or personal property by means of fire or an explosive; (2) defendant
21  did so maliciously; and (3) at the time of the fire or explosion, the
22  building, vehicle, or other real or personal property was used in an
23  activity affecting interstate or foreign commerce.

24      5.   Defendant understands that for defendant to be guilty of
25  the crime charged in Count Two, that is, false statements in
26  connection with the acquisition of a firearm, in violation of Title
27  18, United States Code, Section 922(a)(6), the following must be
28  true: (1) the firearms seller was a licensed firearms dealer,

4

importer, or manufacturer; (2) defendant made a material false statement in connection with acquiring or attempting to acquire from the firearms seller a firearm or ammunition (in this case, a Smith and Wesson, model M&P-15 Sport, 5.56 caliber rifle bearing serial number SN77510); (3) defendant knew the statement was false; and (4) the false statement was material, that is, the false statement had a natural tendency to influence, or was capable of influencing, the firearms seller into believing that the Smith and Wesson, model M&P-15 Sport, 5.56 caliber rifle bearing serial number SN77510, could be lawfully sold to defendant.

<u>PENALTIES</u>

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 2339A(a), is: 15 years' imprisonment; a lifetime period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 922(a)(6), is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.   Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 25 years' imprisonment; a lifetime period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from

1   the offenses, whichever is greatest; and a mandatory special

2   assessment of $200.

3        9.   Defendant understands that supervised release is a period

4   of time following imprisonment during which defendant will be subject

5   to various restrictions and requirements.  Defendant understands that

6   if defendant violates one or more of the conditions of any supervised

7   release imposed, defendant may be returned to prison for all or part

8   of the term of supervised release authorized by statute for the

9   offense that resulted in the term of supervised release, which could

10  result in defendant serving a total term of imprisonment greater than

11  the statutory maximum stated above.

12       10.  Defendant understands that, by pleading guilty, defendant

13  may be giving up valuable government benefits and valuable civic

14  rights, such as the right to vote, the right to possess a firearm,

15  the right to hold office, and the right to serve on a jury.

16  Defendant understands that once the Court accepts defendant's guilty

17  pleas, it will be a federal felony for defendant to possess a firearm

18  or ammunition.  Defendant understands that the convictions in this

19  case may also subject defendant to various other collateral

20  consequences, including but not limited to revocation of probation,

21  parole, or supervised release in another case and suspension or

22  revocation of a professional license.  Defendant understands that

23  unanticipated collateral consequences will not serve as grounds to

24  withdraw defendant's guilty pleas.

25       11.  Defendant understands that, if defendant is not a United

26  States citizen, the felony convictions in this case may subject

27  defendant to: removal, also known as deportation, which may, under

28  some circumstances, be mandatory; denial of citizenship; and denial

1 of admission to the United States in the future. The court cannot,

2 and defendant's attorney also may not be able to, advise defendant

3 fully regarding the immigration consequences of the felony

4 convictions in this case. Defendant understands that unexpected

5 immigration consequences will not serve as grounds to withdraw

6 defendant's guilty pleas.

### FACTUAL BASIS

8     12. Defendant admits that defendant is, in fact, guilty of the

9 offenses to which defendant is agreeing to plead guilty. Defendant

10 and the USAO agree to the statement of facts provided in Attachment A

11 to this plea agreement. Defendant and the USAO agree that this

12 statement of facts is sufficient to support pleas of guilty to the

13 charges described in this agreement and to support the Sentencing

14 Guidelines factors set forth in paragraph 14 below but is not meant

15 to be a complete recitation of all facts relevant to the underlying

16 criminal conduct or all facts known to either party that relate to

17 that conduct.

### SENTENCING FACTORS

19     13. Defendant understands that in determining defendant's

20 sentence the Court is required to calculate the applicable Sentencing

21 Guidelines range and to consider that range, possible departures

22 under the Sentencing Guidelines, and the other sentencing factors set

23 forth in 18 U.S.C. § 3553(a). Defendant understands that the

24 Sentencing Guidelines are advisory only, that defendant cannot have

25 any expectation of receiving a sentence within the calculated

26 Sentencing Guidelines range, and that after considering the

27 Sentencing Guidelines and the other § 3553(a) factors, the Court will

28 be free to exercise its discretion to impose any sentence it finds

appropriate up to the maximum set by statute for the crimes of conviction.

14.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

<u>Count One</u>
<u>Base Offense Level:</u>              43      [U.S.S.G. §§ 2A1.1(a),
                                                 2K1.4(c)(1), 2X1.1, 2X2.1]

<u>Count Two</u>
<u>Base Offense Level:</u>              12      [U.S.S.G. § 2K2.1(a)(7)]


Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.   Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.   If defendant's offense level is so increased, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

15.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

16.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

17.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

8

1     c.   The right to be represented by counsel -- and if

2 necessary have the Court appoint counsel -- at trial.  Defendant

3 understands, however, that, defendant retains the right to be

4 represented by counsel -- and if necessary have the Court appoint

5 counsel -- at every other stage of the proceeding.

6     d.   The right to be presumed innocent and to have the

7 burden of proof placed on the government to prove defendant guilty

8 beyond a reasonable doubt.

9     e.   The right to confront and cross-examine witnesses

10 against defendant.

11     f.   The right to testify and to present evidence in

12 opposition to the charges, including the right to compel the

13 attendance of witnesses to testify.

14     g.   The right not to be compelled to testify, and, if

15 defendant chose not to testify or present evidence, to have that

16 choice not be used against defendant.

17     h.   Any and all rights to pursue any affirmative defenses,

18 Fourth Amendment or Fifth Amendment claims, and other pretrial

19 motions that have been filed or could be filed.

20                    WAIVER OF APPEAL OF CONVICTION

21     18.  Defendant understands that, with the exception of an appeal

22 based on a claim that defendant's guilty pleas were involuntary, by

23 pleading guilty defendant is waiving and giving up any right to

24 appeal defendant's convictions on the offenses to which defendant is

25 pleading guilty.

26                 RESULT OF WITHDRAWAL OF GUILTY PLEA

27     19.  Defendant agrees that if, after entering guilty pleas

28 pursuant to this agreement, defendant seeks to withdraw and succeeds

1 in withdrawing defendant's guilty pleas on any basis other than a

2 claim and finding that entry into this plea agreement was

3 involuntary, then the USAO will be relieved of all of its obligations

4 under this agreement.

## EFFECTIVE DATE OF AGREEMENT

6     20.  This agreement is effective upon signature and execution of

7 all required certifications by defendant, defendant's counsel, and an

8 Assistant United States Attorney.

## BREACH OF AGREEMENT

10     21.  Defendant agrees that if defendant, at any time after the

11 signature of this agreement and execution of all required

12 certifications by defendant, defendant's counsel, and an Assistant

13 United States Attorney, knowingly violates or fails to perform any of

14 defendant's obligations under this agreement ("a breach"), the USAO

15 may declare this agreement breached. All of defendant's obligations

16 are material, a single breach of this agreement is sufficient for the

17 USAO to declare a breach, and defendant shall not be deemed to have

18 cured a breach without the express agreement of the USAO in writing.

19 If the USAO declares this agreement breached, and the Court finds

20 such a breach to have occurred, then: (a) if defendant has previously

21 entered guilty pleas pursuant to this agreement, defendant will not

22 be able to withdraw the guilty pleas, and (b) the USAO will be

23 relieved of all its obligations under this agreement.

24     22.  Following the Court's finding of a knowing breach of this

25 agreement by defendant, should the USAO choose to pursue any charge

26 that was either dismissed or not filed as a result of this agreement,

27 then:

28

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND PROBATION OFFICE NOT PARTIES</u>

23.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing

11

1  Guidelines calculations and determination of sentence, and (c) argue

2  on appeal and collateral review that the Court's Sentencing

3  Guidelines calculations and the sentence it chooses to impose are not

4  error, although each party agrees to maintain its view that the

5  calculations in paragraph 14 are consistent with the facts of this

6  case. While this paragraph permits both the USAO and defendant to

7  submit full and complete factual information to the United States

8  Probation Office and the Court, even if that factual information may

9  be viewed as inconsistent with the facts agreed to in this agreement,

10  this paragraph does not affect defendant's and the USAO's obligations

11  not to contest the facts agreed to in this agreement.

12      25.  Defendant understands that even if the Court ignores any

13  sentencing recommendation, finds facts or reaches conclusions

14  different from those agreed to, and/or imposes any sentence up to the

15  maximum established by statute, defendant cannot, for that reason,

16  withdraw defendant's guilty pleas, and defendant will remain bound to

17  fulfill all defendant's obligations under this agreement. Defendant

18  understands that no one -- not the prosecutor, defendant's attorney,

19  or the Court -- can make a binding prediction or promise regarding

20  the sentence defendant will receive, except that it will be within

21  the statutory maximum.

22                    NO ADDITIONAL AGREEMENTS

23      26.  Defendant understands that, except as set forth herein,

24  there are no promises, understandings, or agreements between the USAO

25  and defendant or defendant's attorney, and that no additional

26  promise, understanding, or agreement may be entered into unless in a

27  writing signed by all parties or on the record in court.

28

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

EILEEN M. DECKER
United States Attorney

_____     2/13/2017
JAY H. ROBINSON                     Date
MELANIE SARTORIS
DEIRDRE Z. ELIOT
Assistant United States Attorneys

_____     2-10-17
ENRIQUE MARQUEZ, JR                 Date
Defendant

_____     2/15/17
YOUNG J. KIM                        Date
ANGELA C. VIRAMONTES
Attorneys for Defendant
ENRIQUE MARQUEZ, JR.


CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

13

1   of relevant Sentencing Guidelines provisions, and of the consequences

2   of entering into this agreement.  No promises, inducements, or

3   representations of any kind have been made to me other than those

4   contained in this agreement.  No one has threatened or forced me in

5   any way to enter into this agreement.  I am satisfied with the

6   representation of my attorney in this matter, and I am pleading

7   guilty because I am guilty of the charges and wish to take advantage

8   of the promises set forth in this agreement, and not for any other

9   reason.

10

11   ENRIQUE MARQUEZ, JR.          2-10-17
                                    Date

12   Defendant

13                 CERTIFICATION OF DEFENDANT'S ATTORNEY

14       I am Enrique Marquez, Jr.'s attorney.  I have carefully and

15   thoroughly discussed every part of this agreement with my client.

16   Further, I have fully advised my client of his rights, of possible

17   pretrial motions that might be filed, of possible defenses that might

18   be asserted either prior to or at trial, of the sentencing factors

19   set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

20   provisions, and of the consequences of entering into this agreement.

21   To my knowledge: no promises, inducements, or representations of any

22   kind have been made to my client other than those contained in this

23   agreement; no one has threatened or forced my client in any way to

24   enter into this agreement; my client's decision to enter into this

25   ///

26   ///

27   ///

28

1   agreement is an informed and voluntary one; and the factual basis set

2   forth in this agreement is sufficient to support my client's entry of

3   guilty pleas pursuant to this agreement.

4

5   YOUNG J. KIM                              Date   2/13/17
    ANGELA C.C.VIRAMONTES

6
    Attorneys for Defendant
7   ENRIQUE MARQUEZ, JR.

15

**EXHIBIT A**

Unless otherwise noted, all factual statements contained in this "Statement of Facts" apply to the time periods detailed in the Indictment in this case.

In approximately 2005, defendant ENRIQUE MARQUEZ, JR. ("defendant") moved to a home next door to Syed Rizwan Farook ("Rizwan") in Riverside, California, within the Central District of California. Beginning on an unknown date and continuing up to and including at least November 2012, there was an agreement between Rizwan and defendant to attack Riverside City College ("RCC") and California State Route 91 ("SR-91"). Pursuant to the planned attacks, defendant and Rizwan agreed to provide material support and resources, including weapons, explosives, and themselves, knowing and intending these resources to be used to conduct the attacks. If they had occurred, these attacks would have been violations of Title 18, United States Code, Section 844(f)(1) (RCC attack) and Title 18, United States Code, Section 844(i) (SR-91 attack). Defendant purchased from separate locations of a licensed firearms dealer (the "firearms seller") located within the Central District of California, two rifles for Rizwan: a Smith and Wesson, model M&P-15 Sport, 5.56 caliber rifle bearing serial number SN77510 ("the Smith and Wesson rifle"); and a DPMS, model A-15, 5.56 caliber rifle bearing serial number FH108002 ("the Oracle rifle"). In connection with the purchase of these rifles, defendant knowingly made material false statements that had a natural tendency to influence, or were capable of influencing the firearms seller into believing that the Smith and Wesson and the Oracle rifles could be lawfully sold to defendant.

Defendant's Initials: EMJ

1   Defendant also researched bomb-making and provided Rizwan with

2   explosive powder and other material to create bombs.

3       **A.  Defendant and Rizwan Planned an Attack at RCC**

4      With respect to the RCC attack, defendant and Rizwan identified

5   the RCC as a possible location for an attack, in part, because they

6   were familiar with the campus.  Defendant and Rizwan were each

7   enrolled as students at RCC: defendant was registered as a student at

8   RCC from 2009 to 2011, and from 2013 to 2015; and Rizwan was

9   registered as a student at RCC from approximately 2004 to 2010.  As

10   part of their plot, defendant and Rizwan planned to start an attack

11   by throwing pipe bombs into the cafeteria area from an elevated

12   position on the second floor.  Defendant and Rizwan would position

13   themselves prior to the attack to escape the cafeteria area without

14   detection, and then agreed to conduct a follow-up attack at another

15   location at RCC.  In 2011 and 2012, RCC was receiving federal

16   financial assistance.

17       **B.  Defendant and Rizwan Planned a "Rush Hour" Attack on SR-91**

18      In addition to the RCC plot, defendant and Rizwan schemed to

19   attack SR-91 during "rush hour" traffic.  In furtherance of their

20   scheme, defendant and Rizwan chose a particular location on SR-91

21   with no readily available exits or off-ramps.  Prior to the attack,

22   defendant intended to deploy to the hills south of the freeway as an

23   overwatch for Rizwan.  Rizwan then would start the attack by throwing

24   pipe bombs into the eastbound lanes of SR-91.  Both defendant and

25   Rizwan believed that the exploding pipe bombs would disable and stop

26   traffic.  As part of the plan, Rizwan would move among the stopped

27   vehicles, shoot his rifle into them, and kill people.  Additionally,

28   defendant planned to shoot into the stopped vehicles from his

Defendant's Initials: EMS

position on the hills while watching for any approaching law enforcement or emergency responders.  In 2011 and 2012, vehicular traffic on SR-91 affected interstate and foreign commerce.

**C.   Defendant Purchased Firearms and Explosives and Gave them to Rizwan**

In late 2011 and early 2012, defendant purchased firearms for Rizwan, namely, the Smith and Wesson and Oracle rifles, from two separate stores of the firearms seller that were located within the Central District of California.  The firearms seller is registered as a Federal Firearms Licensee ("FFL").  Defendant purchased the firearms for Rizwan, rather than Rizwan purchasing them himself, because they believed defendant could purchase them more easily than Rizwan and would receive less scrutiny than Rizwan.

**1.   Defendant Purchased the Smith and Wesson Rifle for Rizwan**

On November 14, 2011, defendant purchased the Smith and Wesson rifle for Rizwan.  On the purchase documentation, specifically, an ATF Form 4473, defendant's name, address, and date of birth are handwritten into Section A of this form, which provides the following admonition: "Section A - Must Be Completed Personally By Transferee (Buyer)."  In addition, the top of the first page of the form states:

> WARNING: You may not receive a firearm if prohibited by Federal or State law.  The information you provide will be used to determine whether you are prohibited under law from receiving a firearm.  Certain violations of the Gun Control Act, 18 U.S.C. Section 921 et.seq., are punishable by up to 10 years imprisonment and/or up to $250,000 fine.

The NOTICES, INSTRUCTION AND DEFINITIONS section of the form instructs that the buyer must "personally complete Section A of the

3                    Defendant's Initials: EMS

1  form and certify (sign) that the answers are true, correct, and

2  complete."

3      Question 11(a) of Section A of the same form states as follows:

4      Are you the actual transferee/buyer of the firearm(s)
listed on this form? Warning: You are not the actual buyer

5      if you are acquiring the firearm(s) on behalf of another
person. If you are not the actual buyer, the dealer cannot

6      transfer the firearm(s) to you.

7      In response to question 11(a), defendant checked the box

8  indicating "Yes."

9      One of the supporting documents for the Smith and Wesson rifle

10  is a form titled "Firearms Purchase Checklist," which defendant

11  signed on November 25, 2011. Defendant signed this form as an

12  affirmation of the following statement:

13      I am purchasing this firearm for my or my immediate
family's personal use. The dealer has explained to me that

14      the straw purchase of a firearm is illegal and I affirm
that I am not purchasing this firearm for anyone other than

15      myself.

16      2.   Defendant Purchased the Oracle Rifle for Rizwan

17      On February 22, 2012, defendant purchased the Oracle rifle for

18  Rizwan. On the purchase documentation, specifically, an ATF Form

19  4473, defendant's name, address, and date of birth are handwritten

20  into Section A of this form, which provides the following admonition:

21  "Section A - Must Be Completed Personally By Transferee (Buyer)."

22  The top of the first page of the form states:

23      WARNING: You may not receive a firearm if prohibited by
Federal or State law. The information you provide will be

24      used to determine whether you are prohibited under law from
receiving a firearm. Certain violations of the Gun Control

25      Act, 18 U.S.C. Section 921 et.seq., are punishable by up to
10 years imprisonment and/or up to $250,000 fine.

26

27      The NOTICES, INSTRUCTION AND DEFINITIONS section of the form

28  instructs that the buyer must "personally complete Section A of the

      Defendant's Initials: EMJ

1  form and certify (sign) that the answers are true, correct, and
2  complete."

3      Question 11(a) of the same the form states:

4      Are you the actual transferee/buyer of the firearm(s)
       listed on this form?  Warning: You are not the actual buyer
5      if you are acquiring the firearm(s) on behalf of another
       person.  If you are not the actual buyer, the dealer cannot
6      transfer the firearm(s) to you.

7      In response to question 11(a), defendant checked the box
8  indicating "Yes."

9      One of the supporting documents for the purchase of the Oracle
10  rifle is a form titled "Firearms Purchase Checklist," which defendant
11  signed on February 22, 2012.   Defendant signed this form as an
12  affirmation of the following statement:

13      I am purchasing this firearm for my or my immediate
        family's personal use.  The dealer has explained to me that
14      the straw purchase of a firearm is illegal and I affirm
        that I am not purchasing this firearm for anyone other than
15      myself.

16          3.   Rizwan Provided Defendant Money to Purchase the Rifles

17      In November 2011 and in January and February 2012, shortly
18  before defendant purchased the Smith and Wesson and Oracle rifles
19  respectively, Rizwan gave defendant money for the purchase of each
20  rifle, which defendant deposited into defendant's bank account.

21          4.   Defendant Purchased Smokeless Powder to Make
                 Explosives
22

23      In connection with the RCC and SR-91 plots, defendant discussed
24  with Rizwan the use of radio-controlled devices, including a radio-
25  controlled car, to activate IEDs, as well as the use of remote-
26  controlled devices to achieve a safe separation distance from the
27  device when it went off.  Defendant and Rizwan reviewed Inspire
28  Magazine's instructions on how to make an IED and defendant explained

                              5            Defendant's Initials: EMS

1  to Rizwan how to build a closed-circuit that would create a "spark."

2  Defendant obtained Christmas tree lightbulbs for the specific purpose

3  of manufacturing an igniter for the IEDs that he and Rizwan intended

4  to use during their planned attacks.  In or around 2012, defendant

5  also purchased a container of smokeless powder in furtherance of his

6  and Rizwan's planned attacks.

7           5.  Defendant and Rizwan Continue to Prepare for their
                Attacks Until in or about November 2012
8

9     From February 2012 to mid-2012, defendant and Rizwan made

10  multiple trips to gun ranges, including ranges in the Riverside, San

11  Bernardino, and Los Angeles areas, in order to practice shooting.

12  Defendant also watched online videos produced by a U.S.-based

13  tactical equipment manufacturer on the following topics to prepare

14  for the attacks: pistols and carbines, firearms tactics, and how to

15  use cover to walk around a corner while keeping a clear shooting

16  angle.

17     Defendant ceased plotting with Rizwan to attack the RCC and SR-

18  91 in or about November 2012.

19     **D.  Defendant Participated in an Interview with Law Enforcement
          Following the December 2, 2015 San Bernardino Terrorist**
20       **Attack**

21     On the morning of December 2, 2015, two individuals, including

22  Rizwan, shot and killed 14 people and wounded at least 22 other

23  people at the Inland Regional Center ("IRC") in San Bernardino,

24  California before leaving in a black SUV.  Later that day, law

25  enforcement encountered Rizwan and his wife, Tashfeen Malik

26  ("Malik"), in the black SUV in Redlands, California.  Rizwan and

27  Malik engaged in a firefight with law enforcement officers that ended

28  with Rizwan's and Malik's deaths and the wounding of a law

Defendant's Initials: EMS

1   enforcement officer.  From the scene of the shootout, law enforcement

2   officers recovered four firearms, including the Smith and Wesson

3   rifle and the Oracle rifle.  Subsequent forensic testing of the

4   ammunition casings found at the IRC and near the black SUV determined

5   that the Smith and Wesson rifle and the Oracle rifle were used in the

6   attack at the IRC and the firefight with law enforcement.

7      Additionally, law enforcement searched the IRC and found on a

8   table a black bag containing an IED, filled with smokeless powder.

9   On December 3, 2015, law enforcement seized a bottle of smokeless

10   powder during a search of Rizwan's residence, which was later

11   determined by an FBI Explosives Chemistry Examiner to be chemically

12   and physically consistent with the bottled powder found at Rizwan's

13   residence.  Defendant subsequently identified the bottle of powder

14   seized at Rizwan's residence as the same bottle that he purchased in

15   2012 and gave to Rizwan.

16      Defendant was at work on December 2, 2015, during the San

17   Bernardino terrorist attack, and was not one of the shooters at the

18   IRC or involved in the subsequent shootout with police.  After news

19   reports of the attack were released, defendant called 911 stating

20   that his firearms were used in the attacks and went to the emergency

21   room at UCLA Harbor Medical Center, where he was referred to the

22   psychiatric ward and placed on an involuntary hold.  Upon his release

23   from the hospital on December 6, 2015 and continuing through December

24   16, 2015, defendant agreed to participate in an interview with FBI

25   Special Agents.  During this time, defendant provided information to

26   law enforcement about Rizwan, as well as information about

27   defendant's prior relationship and planning with Rizwan as described

28   herein.  During the interview, defendant informed the FBI that he had

7

Defendant's Initials: EMS

1  withdrawn from Rizwan in or around November 2012 and did not have

2  prior knowledge of the December 2, 2015 attack.

Defendant's Initials: EMS