SANDRA R. BROWN
Acting United States Attorney
PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division
JAY H. ROBINSON (California Bar No. 230015)
MELANIE SARTORIS (California Bar No. 217560)
DEIRDRE Z. ELIOT (California Bar No. 145007)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     3403 Tenth Street
     Suite 200
     Riverside, California 92501
     Telephone: (951) 276-6267
                (213) 894-5615
                (714) 338-3599
     Facsimile: (951) 276-6202
                (213) 894-7631
                (714) 338-3561
     E-mail:    jay.robinson@usdoj.gov
                melanie.sartoris@usdoj.gov
                deirdre.eliot@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>ENRIQUE MARQUEZ, JR.,<br><br>              Defendant. | No. CR 15-93-JGB<br><br>GOVERNMENT'S OBJECTIONS TO THE PRESENTENCE REPORT<br><br>Hearing Date: November 6, 2017<br>Hearing Time: 2:00 p.m.<br>Location:     Courtroom of the<br>              Hon. Jesus G.<br>              Bernal |

The United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California, and Assistant United States Attorneys Jay H. Robinson, Melanie Sartoris, and Deirdre Z. Eliot, hereby submits its objections to the October 2, 2017 Presentence Report ("PSR") for defendant

Enrique Marquez, Jr. in accordance with Federal Rule of Criminal Procedure 32(f)(1).

The government's objections to the PSR are based on the attached memorandum of points and authorities, the files and records in this case, the October 2, 2017 PSR, and such further evidence and argument as the Court may permit.

Dated: October 16, 2017

Respectfully submitted,

SANDRA R. BROWN
Acting United States Attorney

PATRICK R. FITZGERALD
Assistant United States Attorney
Chief, National Security Division

/s/ Jay H. Robinson
JAY H. ROBINSON
MELANIE SARTORIS
DEIRDRE Z. ELIOT
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On February 16, 2017, defendant Enrique Marquez, Jr. ("defendant") entered guilty pleas pursuant to a written plea agreement (the "Plea Agreement") to Count One of the Indictment, charging him with conspiring with Syed Rizwan Farook ("Rizwan") to provide material support to terrorists, in violation of 18 U.S.C. § 2339A(a), and Count Two of the Indictment, charging him with false statements in connection with the acquisition of a firearm he obtained for Rizwan, in violation of 18 U.S.C. § 922(a)(6). (CR[1] 65.) On October 2, 2017, the United States Probation Office ("USPO") disclosed the PSR to the parties. (CR 72.) The PSR calculated a total offense level of 42, a Criminal History Category of VI, and a resulting advisory Guidelines range of 300 months imprisonment. (PSR p.3, ¶¶ 30-51, 117-118.) Federal Rule of Criminal Procedure 32(f)(1) requires the parties to lodge written objections to the PSR including "objections to material information, sentencing guidelines ranges, and policy statements contained in or omitted from the report." For the reasons listed herein, the government objects to the PSR's Sentencing Guidelines calculations and certain omissions of material facts from the PSR.

**II.   THE PRESENTENCE REPORT INCORRECTLY USED U.S.S.G. § 2A1.5 TO CALCULATE THE ADVISORY GUIDELINES RANGE**

The PSR calculated the total offense level as follows:

Count One
Base Offense Level       :    33    [U.S.S.G. §§ 1B1.2(a), 2X1.1(c), 2K1.4(c), 2A1.5]

---

[1] "CR" refers to the Clerk's Record and is followed by the applicable docket number.

```
        Vicitm Related
        Adjustment
        Felony Offense Intended
        To Promote a Federal
        Crime of Terrorism       :     +12   [U.S.S.G. § 3A1.4]

        Acceptance of
        Responsibility           :     -3    [U.S.S.G. § 3E1.1(b)]

        Total Offense Level      :     42[2]
```

(PSR ¶¶ 30-51, 117-118).

Based on a total offense level of 42 and a criminal history category of VI, the PSR calculated the advisory guidelines range at 360 months to life imprisonment. (PSR ¶¶ 113-115.) In accordance with U.S.S.G. § 5G1.1(c)(2), the PSR recalculated the guidelines range at 300 months imprisonment because "the statutorily authorized maximum sentence of 25 years is less than the minimum of the guideline range." (PSR ¶ 115.) The PSR cited no factors warranting either a departure or a variance from the applicable 300 months advisory guidelines range. (PSR ¶¶ 131-132.)

The PSR elected to apply § 2A1.5, Conspiracy or Solicitation to Commit Murder, to the underlying offense instead of § 2A1.1, First Degree Murder. The government disagrees. The applicable guidelines section for a conviction for 18 U.S.C. § 2339A (Providing Material Support to Terrorists) is U.S.S.G. § 2X2.1. Although § 2339A criminalizes completed provision of material support as well as attempts and conspiracies, § 2X2.1, by its plain language does not differentiate between those three theories of § 2339A liability and thus does not afford an offense level reduction where the § 2339A violation rests on conspiracy. Had the Sentencing Commission

---

[2] The PSR grouped the convictions for Counts One and Two under U.S.S.G. § 3D1.2(b).

2

intended to afford such a reduction it could have done so. Rather, Section 2X2.1 sets the base offense level as "the same level as that for the underlying offense." In the case of a violation of 18 U.S.C. § 2339A or § 2339C(a)(1)(A), "underlying offense" means the offense the defendant is convicted of having materially supported or provided or collected funds for, prior to or during its commission. U.S.S.G. § 2X2.1, Application Note 1.

In this case, the underlying offenses for defendant's § 2339A conviction are using explosives to damage or destroy an institution or organization receiving federal financial assistance in violation of 18 U.S.C. § 844(f) and using explosives to damage or destroy vehicles and real or personal property used in interstate or foreign commerce or in an activity affecting interstate commerce in violation of 18 U.S.C. § 844(i). (See CR 65 at ¶ 4.) In the latter offense, defendant and Rizwan intended to bomb and kill motorists on the SR-91 freeway and to shoot and kill additional motorists and first responders. The applicable guidelines section to a conviction for 18 U.S.C. § 844(i) is § 2K1.4. If death resulted from the offense, or if the offense was intended to cause death or serious bodily injury, then § 2K1.4(c)(1) requires the application of the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined by § 2K1.4(a)-(b). Here, defendant and Rizwan's stated purpose for attacking SR-91 was to kill as many people as they could during peak traffic. The most analogous guideline section to this stated purpose is § 2A1.1 (First Degree Murder). The base offense level for § 2A1.1

is 43.[3]  The application of § 2A1.1 results in the following total offense level calculation:

<pre>
Count One
Base Offense Level        :    43    [U.S.S.G. §§ 2X2.1, 2K1.4(c),
                                           2A1.1]
Vicitm Related
Adjustment
Felony Offense Intended
To Promote a Federal
Crime of Terrorism        :   +12    [U.S.S.G. § 3A1.4]

Acceptance of
Responsibility            :    -3    [U.S.S.G. § 3E1.1(b)]

**Total Offense Level**       :    52

**Adjusted Total
Offense Level**               :    43
</pre>

Adding the 12 level enhancement under § 3A1.4 yields a total offense level of 55.  Subtracting three levels for acceptance of responsibility under § 3E1.1(b) results in a total offense level of 52.  The maximum offense level under U.S.S.G. Chapter 5, however, is level 43.  Based on a total offense level of 43 and a criminal history category of VI, the properly calculated advisory guidelines range is life imprisonment.  See U.S.S.G. Ch. 5, Sentencing Table.

**III. PARAGRAPH 20 OMITS THE MATERIAL FACT THAT DEFENDANT INTENDED TO SHOOT FIRST RESPONDERS DURING HIS PLANNED ATTACK ON SR-91**

The PSR devotes two paragraphs to describing the facts of defendant's plot to attack motorists on SR-91.  (PSR ¶¶ 19, 20.) These paragraphs describe defendant's role in this plot as a "look out [sic] for Rizwan" who "planned to shoot into the stopped vehicle" from defendant's lookout position.  (Id.)  However, as reflected in the materials provided to the Probation Office, defendant admitted to

---

[3] This analysis informed the parties agreements found in paragraph 14 of the plea agreement.  (CR 65 at ¶ 14.)

4

a far more extensive role in this attack.  According to defendant, he planned to:

> shoot into . . . stopped vehicles from his position on the hills while watching for any approaching law enforcement or emergency responders.  [H]is priority was to shoot law enforcement personnel before shooting life-saving personnel.

(CR 1 at ¶ 37.)

Defendant, moreover, told federal agents that he and Rizwan viewed first responders as higher-priority targets than ordinary civilians:

> SA: And did you talk about life safety personnel versus law enforcement response? Did you think -- did you think about the two separate responses that you get?
>
> EM: Yeah.
>
> SA: Okay. And tell me about that.
>
> EM: Law enforcement would be a higher priority.
>
> SA: A higher priority for what?
>
> EM: For killing.
>
> SA: Okay. Why?
>
> EM: Because they're a lot more dangerous than the lifesaving personnel.
>
> SA: Okay. So if you can eliminate them, that frees you up?
>
> EM: Yeah, pretty much.
>
> SA: Okay. Any other considerations that you discussed or even that you're thinking about now as we talk about this, how this would have gone?
>
> EM: No.
>
> SA: You --
>
> EM: (Inaudible).
>
> SA: You were preparing to die?
>
> EM: Yeah.

5

        SA: That was okay? Okay.

        EM: Yeah.

(Bates 3789).

In sum, the government objects to the PSR's generalized description of defendant's stated role for the attack on SR-91. The PSR omits the material fact that defendant intended to kill law enforcement personnel and emergency responders if he and Rizwan were able to carry out their planned attack of SR-91. These facts are directly relevant to a proper and truthful assessment of the nature and circumstances of the offense and the need for any sentence to reflect the seriousness of the offense. See 18 U.S.C. § 3553(a)(1)-(2).

**IV.  PARAGRAPHS 21 THROUGH 25 OMIT THE MATERIAL FACTS THAT DEFENDANT KNOWINGLY MADE MATERIAL FALSE STATEMENTS IN BUYING TWO RIFLES FOR RIZWAN**

Defendant bought two rifles for Rizwan at separate retailers in late 2011 and early 2012. (PSR ¶ 21.) For each purchase, defendant affirmed in writing that he was the actual buyer of the rifles. (PSR ¶ 23.) The PSR, however, omits two material facts: 1) defendant knew he was not the actual buyer of these rifles at the time he purchased both of them; and 2) defendant bought these rifles specifically for Rizwan as evidenced by defendant's admissions and by financial records showing that Rizwan paid defendant for the rifles. Defendant admitted these material facts to law enforcement (CR 1 at 13-18) and in the factual basis of his plea agreement (CR 65 at 18-20.) The PSR should explicitly state these facts rather than relegate them to reasonable inferences from the generalized description of defendant's conduct contained in paragraphs 21 through 25.

**V. THE PSR CONCLUDES, WITHOUT EXPLANATION, THAT RIZWAN'S DECEMBER 2, 2015 TERRORIST ATTACK AT THE SAN BERNARDINO INLAND REGIONAL CENTER IS NOT RELEVANT CONDUCT UNDER U.S.S.G. § 1B1.3(a)**

The PSR roots its calculation of the advisory guidelines range in § 1B1.3(a) and the commentary at Application Notes 2 and 3. (PSR ¶ 31.) Specifically, the PSR relied on the three-part test set forth in § 1B1.3(a)(1)(B). (Id.) Under this limited framework, the PSR excluded the December 2, 2015 terrorist attack at the San Bernardino Inland Regional Center ("IRC") as relevant conduct for purposes of calculating the advisory guidelines range. (PSR ¶¶ 52-55.) The PSR, however, should consider the IRC attack as relevant conduct under sections 1B1.3(a)(2) and (3).[4]

**A. The December 2, 2015 Terrorist Attack Should Count as Relevant Conduct Under § 1B1.3(a)(2) Because it was Part of Defendant and Rizwan's Common Scheme or Plan**

The Guidelines define "offense" as "the offense of conviction and all relevant conduct under § 1B1.3." U.S.S.G. § 1B1.1, Application Note 1(H). The focus of the relevant conduct analysis lies in determining the relationship between the offense of conviction and any uncharged or collateral offenses. United States v. Vargem, 747 F.3d 724, 731 (9th Cir. 2014) (citing United States v. Pinnick, 47 F.3d 434, 439 (D.C.Cir. 1995); United States v. Farah, 991 F.2d 1065, 1070 (2d Cir. 1993)). Relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that

---

[4] The government's exercise of its prosecutorial discretion not to charge defendant for the IRC attack, based in part on evidence that he appeared to have withdrawn in approximately 2012 from the plot with Rizwan, does not alter the relevant conduct analysis for purposes of the guidelines. Apart from the guidelines calculations, the IRC attack remains conduct that the court should consider under 18 U.S.C. § 3553.

7

occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." Id. § 1B1.3(a)(1). Relevant conduct may also include uncharged offenses that would be grouped under § 3D1.2(d), and that were "part of the same course of conduct or common scheme or plan as the offense of conviction." Id. § 1B1.3(a)(2).

Application Note 5(B)(i) to § 1B1.3 defines "common scheme or plan" as follows:

> For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi.

The Ninth Circuit has long held that "the essential components of the section 1B1.3(a)(2) analysis are similarity, regularity, and temporal proximity." United States v. Hahn, 960 F.2d 903, 910 (9th Cir. 1992).

On the morning of December 2, 2015, two individuals, including Rizwan, murdered 14 people and attempted to murder many others at the IRC in San Bernardino, California. (PSR ¶ 52; CR 65 at 21.) Later that day, Rizwan and his wife, Tashfeen Malik ("Malik"), engaged in a firefight with law enforcement officers that ended with Rizwan and Malik's deaths and the wounding of a law enforcement officer. (PSR ¶ 52; CR 65 at 21-22.) From the scene of the shootout, law enforcement officers recovered four firearms: the Smith & Wesson rifle and the Oracle rifle that defendant purchased for Rizwan in 2011 and 2012, and two semi-automatic handguns. (PSR ¶ 53; CR 1 at ¶ 58; CR 65 at 22.) The rifles that Rizwan and Malik used to shoot

8

at law enforcement were used in the attack at the IRC. (PSR ¶ 53; CR 65 at 22.)

Additionally, law enforcement recovered a black bag containing an IED on a table inside the IRC. (PSR ¶ 54; CR 65 at 22.) This IED was composed of three galvanized steel pipe bombs, filled with smokeless explosive powder. (CR 1 at ¶ 60; CR 65 at 22.) The three pipe bombs were attached to a remote-control car to create a radio-controlled IED. At the time law enforcement found it, the IED was armed and ready to detonate. Inside the vehicle where Rizwan and Malik exchanged gunfire with law enforcement, law enforcement recovered the remote control for the radio-controlled IED at the scene of the shootout from inside of Rizwan and Malik's vehicle. (CR 1 at ¶ 60.) Defendant and Rizwan agreed to use this same method of remote detonation using a radio-controlled car during their planned attacks at RCC and SR-91. (CR 65 at 20.)

On December 3, 2015, law enforcement seized a bottle of smokeless powder during a search of Rizwan's residence. A subsequent forensic examination of the powder contained in the IED determined that it was chemically and physically consistent with the bottled powder found at Rizwan's home. (CR 1 at ¶¶ 63a-c.) Defendant later identified the bottle of powder seized at Rizwan's residence as the same bottle that he purchased in 2012 and gave to Rizwan. (PSR ¶ 54; CR 65 at 22.) Defendant further admitted that the purpose of the smokeless powder was to build pipe bombs in support of the plots for the RCC and SR-91 attacks. (CR 1 at ¶ 66.)

Defendant's and Rizwan's plots served as the template for Rizwan's attack at the IRC, which employed the same modus operandi and the very same firearms and explosives material as the IRC attack,

9

namely defendant's rifles and explosive powder.  Defendant and Rizwan plotted to maim and kill untold numbers of people in public places using firearms and explosives.  Rizwan used the same tactics, motivations, means, and instrumentalities to attack the IRC that he and defendant planned to use three years prior.  The IRC attack differed in only one meaningful respect from Rizwan's prior plotting with defendant – Rizwan's accomplice was his wife rather than defendant.  As a result, the PSR should include the IRC attack as relevant conduct under § 1B1.3(a)(2) in its analysis of the advisory guidelines range.

### B. The December 2, 2015 Terrorist Attack Should Count as Relevant Conduct Under § 1B1.3(a)(3) Because it was Harm that Resulted Directly From Defendant's Prior Plotting with Rizwan

"Relevant conduct" also includes "all harm that resulted from the acts and omissions specified in subsection[ ](a)(1) . . . and all harm that was the object of such acts and omissions."  U.S.S.G. § 1B1.3(a)(3); see United States v. Hicks, 217 F.3d 1038, 1048 (9th Cir. 2000) (explaining that the phrase "resulted from" in § 1B1.3(a)(3) establishes a causation requirement which other circuits have held is satisfied when the harm was a "direct result" or "flowed naturally" from the defendant's criminal misconduct).

The term "resulted from" establishes a causation requirement.  Hicks, 217 F3d at 1048 (citing United States v. Yeaman, 194 F.3d 442, 457 (3d Cir. 1999) ("Section 1B1.3(a)(3) establishes a causation requirement when determining actual loss.")); United States v. Molina, 106 F.3d 1118, 1123–24 (2d Cir. 1997) (holding that causation is established for purposes of U.S.S.G. § 1B1.3(a)(3) when the defendant "put into motion a chain of events that contained an

10

inevitable tragic result" of the relevant harm) (internal quotation marks omitted); United States v. Fox, 999 F.2d 483, 486 (10th Cir. 1993) (holding that causation is established for purposes of § 1B1.3(a)(3) when the harm was a "direct result" or "flowed naturally" from the defendant's criminal misconduct); see also United States v. Guillette, 547 F.2d 743, 749 (2d Cir.1976) ("We find the principle of proximate cause embodied in [18 U.S.C. § 241] through the phrase 'if death results.'").

　　　Rizwan's attack at the IRC was both the direct and proximate result of his prior plotting with defendant. Defendant bought both rifles and smokeless powder for Rizwan knowing that he planned to use them to commit mass murder. (CR 1 at ¶¶ 39-41; CR 65 at 18-21; PSR ¶¶ 15-16, 21-25, 54). The government is aware of no evidence that defendant took affirmative steps to mitigate the latent threat posed by his prior planning with Rizwan, let alone any step to break the causal chain. Consequently, the PSR should include the IRC attack as relevant conduct under § 1B1.3(a)(3) in its analysis of the advisory guidelines range.