UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CRIMINAL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCR 15-93 JGB** | Date | June 10, 2020 |
| Title | *United States of America v. Enrique Marquez, Jr.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Government: | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**    Order DENYING Defendant's Motion to Withdraw Guilty Plea (IN CHAMBERS)

Before the Court is Defendant Enrique Marquez, Jr.'s motion to withdraw guilty plea. ("Motion," Dkt. No. 160; "Supplemental Motion," Dkt. No. 172[1].) On January 30 and 31, 2020, the Court held hearings on the Motion. After considering oral argument, papers filed in support of and in opposition to the Motion, and the evidence presented at the hearings, the Court DENIES Defendant's Motion.

### I.   BACKGROUND

On December 17, 2015, Defendant was charged with (1) conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A(a) ("Count I"), (2) making a false statement in connection with the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6) ("Count II"), and (3) fraud and misuse of visas, permits, and other documents in violation of 18 U.S.C. § 1546 ("Count III").  (See "Indictment," Dkt. No. 1.)  Defendant signed a plea agreement on February 14, 2017 and pled guilty to Count I and II on February 16, 2017. ("Plea Agreement," Dkt. No. 65; "Plea," Dkt. No. 67.)

On May 24, 2019, Defendant moved to withdraw his guilty plea as to Count I. (Motion.) Along with the Motion, Defendant filed the Declaration of Enrique Marquez Jr. ("Marquez Declaration," Dkt. No. 161.) On June 11, 2019, Defendant filed the Supplemental Motion along

---

[1] Plaintiff filed the Supplemental Motion on June 11, 2019. The Court considers both the Motion and the Supplemental Motion together.

with the Declaration of Francisco C. Gómez Jr., Ph.D. ("Gómez Declaration," Dkt. No. 173.) The Government opposed the Motion on December 23, 2019. ("Opposition," Dkt. No. 226.) In support of the Motion, the Government filed the following:

- Declaration of Saul J. Faerstein, M.D. ("Faerstein Declaration," Dkt. No. 226-6;)[2]
- Declaration of Daniel A. Martell, Ph.D, ABPP ("Martell Declaration,: Dkt. No. 22-7;)
- Excerpts of Transcript of the Evaluation of Enrique Marquez, Jr. on September 3, 2019 ("Martell Examination Excerpts," Dkt. No. 226-8;)
- Excerpts of Transcript of the Evaluation of Enrique Marquez, Jr. on September 11, 2019 ("Faerstein Examination Excerpts," Dkt. No. 226-8;)
- Health Records of Enrique Marquez, Jr. from Metropolitan Detention Center, Los Angeles ("MDC Records," Dkt. No. 226-10;)
- Various emails from Enrique Marquez Jr. to a friend ("Emails," Dkt. No. 226-12;)
- Various letters from Enrique Marquez Jr.'s to a friend ("Letters," Dkt. No. 226-13)

Defendant replied on January 21, 2020. ("Response," Dkt. No. 238.) The Court held evidentiary hearings on the Motion on January 30 and 31, 2020, at which Defendant cross-examined two of the Government's witnesses.[3] The parties also presented oral argument.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that a defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). "While a defendant is not permitted to withdraw his guilty plea 'simply on lark,' the 'fair and just' standard is generous and must be applied liberally." United States v. McTiernan, 546 F.3d 1160, 1167 (9th Cir. 2008) (citations omitted). "The burden of establishing that withdrawal is warranted rests on the defendant." United States v. Ensinger, 567 F.3d 587, 590 (9th Cir. 2009).

## III. DISCUSSION

On February 16, 2017, Defendant pled guilty to Counts I and II of the Indictment. (Plea.) Two days earlier, he signed the Plea Agreement, admitting that that "there was an agreement between Rizwan and defendant to attack Riverside Community College ('RCC') and California State Route 91 ('SR-91')." (Plea Agreement, Exhibit A.) Now Defendant asks the Court to allow him to withdraw his plea as to Count I. (Motion at 11.) He insists his guilty plea was premised on a lie—he knew he was not guilty when he entered it. (Id.) Despite his now asserted belief that he was not guilty, Defendant claims that he pled guilty because he "was very afraid [his] case would

---

[2] For ease of reference, the Court will cite to the Government's Exhibits using "GEX" and the page number.

[3] The Government waived its opportunity to cross-examine the Defendant's witnesses.

never go away," he "did not want the surviving victims and victims' families to have to sit through a trial," and he "felt remorse and responsibility" for the terrorist attack committed by his former friend, Rizwan Farook, and Rizwan's wife, Tashfeen Malik, on December 2, 2015 in San Bernardino, California. (Marquez Declaration ¶ 37.)

It is neither fair nor just to punish an individual for the crimes of another. While Defendant's arrest and prosecution is closely linked to the December 2, 2015 attack, Defendant is not charged with any crime arising out of the horrible acts committed that day. And for good reason: Defendant had no prior knowledge that the December 2, 2015 attack was going to occur, he played no role in planning it, and he ended his friendship with the perpetrator of the attack, Rizwan Farook, years before the attack occurred. The December 2, 2015 attack is Rizwan Farook and Tashfeen Malik's crime—not Defendant's. And the victims of that attack are Rizwan Farook and Tashfeen Malik's victims—not Defendant's.

If, therefore, Defendant pled guilty to Count I only because he wanted to "take responsibility for the acts of his friend Rizwan," there is fair and just reason to allow him to withdraw that plea. (See Gómez Declaration at 32.) If, however, Defendant pled guilty because he believed at the time that he was in fact guilty and has since changed his mind, there is not fair and just reason to allow him to withdraw his guilty plea. See United States v. Ensminger, 567 F.3d 587, 593 (9th Cir. 2009) ("[A] change of heart-even a 'good faith change of heart'-is not a fair and just reason that entitles [a defendant] to withdraw his plea.") Accordingly, whether Defendant may withdraw his guilty plea hinges on whether he believed himself to be guilty on February 16, 2017. Because Defendant carries the burden of proof, he must prove to the Court that he believed he was not guilty on the day he entered his plea.

Defendant is the only witness to his thoughts. He alone knows his true motivation for pleading guilty to Count I on February 16, 2017. Unfortunately, he lacks credibility as a witness—whether at the plea hearing or now, he has lied to this Court at some point. Accordingly, the Court cannot now rely on his testimony alone. Other evidence must support Defendant's current version of events to meet his burden to withdraw his plea.

Defendant does not argue that he lacked the ability to understand the nature of his guilty plea. (Motion at 11–12.) Nor does he argue that lacked access to effective assistance of counsel. (Id.) Instead, he argues that his mental state prevented him from appreciating the value of his life, and therefore he was unable to appreciate the consequences of a guilty plea: he asserts that he "did not care [about] the outcome or consequences of [] pleading guilty" because he was "depressed and without any concern or hope" for his own life. (Marquez Declaration ¶ 38.) Put differently, Defendant asserts that his depression made him susceptible to pleading guilty for the wrong reason: because he felt bad that his former friend committed a separate crime and not because he believed himself to be guilty of the crime charged. In order to carry his burden on the Motion, Defendant must—at a minimum—demonstrate that he was in fact severely depressed in the weeks leading up to his guilty plea. If the evidence suggests he was not depressed, his narrative falls apart, and he fails to prove a fair and just reason to allow the withdrawal.

Two categories of records shed light on Defendant's mindset in the weeks leading up to his Plea: (1) Defendant's health records from MDC and (2) Defendant's communications with individuals outside of the prison. Between January 17, 2017 and February 16, 2017, the day of the Plea, Marquez was evaluated three times by healthcare professionals at MDC:

- On January 17, 2017, Psychiatric Intern Brooks evaluated Defendant. (GEX at 605.) Defendant reported feeling "okay." (Id.) Brooks observed that Defendant had poor eye contact but concluded that Defendant was euthymic. (Id.)

- On January 27, 2017, Psychiatric Intern Brooks again evaluated Defendant. (Id. at 606.) Defendant reported feeling "fine." (Id.) Brooks observed that Defendant appeared tired and had a flat affect. (Id.)

- On February 15, 2019, Psychiatric Intern Lee evaluated Defendant. (Id. at 607.) Lee observed that Defendant had appropriate eye contact and that his thought processes seemed "logical, linear, and coherent." (Id.) Lee concluded Defendant was euthymic. (Id.)

On one hand, Defendant's flat affect, tired appearance, and poor eye contact are all consistent with depression. On the other hand, the evaluators twice concluded that Defendant was euthymic, which the Diagnostic and Statistical Manual of Mental Disorders, 5th Edition, defines as "mood in the 'normal' range" and "the absence of depressed or elevated mood." Defendant's own reports that he was "fine" and "okay" support this euthymic diagnosis. (See GEX at 605–06.) While the records provide little detail regarding the any further basis for the euthymic diagnosis—and it is entirely possible that Defendant reported he was feeling okay when he was not—the fact remains that the mental health professionals who observed Defendant concluded he was not depressed. Accordingly, while these records to not necessarily disprove Defendant's testimony that he felt "hopeless and dead" and "very depressed" during this period, they do not support it either. (See Marquez Declaration at 71.)

Defendant's communications with individuals outside of MDC during this time also reveal his mood. In early 2017, Defendant wrote two letters and three emails to a friend:

- On January 3, 2017, Defendant wrote a five-page letter to a friend. (GEX at 846–50.) He explained his plans for the future, including "a degree in mechanical engineering or manufacturing engineering." (Id. at 847.) He expressed that he loved reading "Fried Green Tomatoes at the Whistle Stop Café." (Id. at 848.) He also relayed a story about how his roommate walked into their shared cell and caught Defendant singing. (Id. at 850.)

- On January 24, 2017, Marquez wrote a four-page letter to a friend. (Id. at 842–45.) In it, he described a book he was reading as "inspiring," and explained that it gave him "hope [he] still ha[d] the power to change the world for the better." (Id. at 842.) He expressed a positive outlook on his prison experience and described

himself as "a bit more grateful of [his] incarceration." (Id.) He shared his opinions about a novel, "The Price of Salt," and waxed poetic about the similarities between love and cigarettes—concluding that both are "toxic, addictive, and pleasurable." (Id. at 843.) Near the end, he stated that he "enjoyed writing the letter." (Id. at 844.) He noted that he feared being "forced into a blue Fred Flintstone suit as a result of my words," a likely reference to MDC's suicide watch protocols. (Id.) After he signed off, he included a poem. (Id. at 845.)

- On February 5, 2017, Defendant emailed a friend to ask if his mother could send the friend something. (Id. at 840.)

- On February 6, 2017, Defendant emailed a friend. (Id.) He told the friend that while the inmates had the opportunity to watch the Super Bowl, he had not watched because he "was too busy speaking to someone and eating my wings." (Id.) He noted, "I did overhear the Lady Gaga performance. Gawd, I wanted to dance along to 'Telephone,' but I can't let any of these guys know I dig her music." (Id.)

- On February 13, 2017, Defendant emailed a friend. (Id. at 841.) He reflected on his past substance abuse. (Id.) He commented that "[t]here is much pleasure one can gain by seeing their loved one smile and laugh. Even better, you're the source of their joy." (Id.)

These communications are not the words of a severely depressed person who has lost the will to live. To the contrary, they suggest that Defendant was finding ways to enjoy his life: he was singing in his cell, fighting the urge to dance to Lady Gaga, mussing over the books he read, and chatting with the other inmates. That he even reached out to a friend outside MDC at all is inconsistent with his current claim that he lacked the will to live.

The Court cannot know why Defendant pled guilty to Count I. What is clear, however, is that Defendant was not severely depressed—at least not consistently so—in the weeks leading up to the guilty plea. Because Defendant has failed to prove that he was depressed, he has also failed to prove that his depression made him susceptible to pleading guilty when he knew he was not guilty. Accordingly, Defendant has failed to meet his burden to demonstrate there is fair and just reason to allow him to withdraw the Plea.

//
//
//
//
//
//
//

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion.  The sentencing hearing is set for August 17, 2020 at 2:00 pm.


**IT IS SO ORDERED.**