1   TRACY L. WILKISON
    Attorney for the United States,
2   Acting Under Authority Conferred by
    28 U.S.C. § 515
3   CHRISTOPHER D. GRIGG (California Bar No. 220243)
    Assistant United States Attorney
4   Chief, National Security Division
    MELANIE SARTORIS (California Bar No. 217560)
5   Assistant United States Attorney
    Deputy Chief, General Crimes Section
6   JULIUS J. NAM (California Bar No. 288961)
    Assistant United States Attorney
7   Deputy Chief, Riverside Branch Office
         3403 Tenth Street
8        Suite 200
         Riverside, California 92501
9        Telephone: (213) 894-5429/5615; (951) 276-6942
         Facsimile: (213) 894-2927
10       E-mail:    christopher.grigg@usdoj.gov
                    melanie.sartoris@usdoj.gov
11                  julius.nam@usdoj.gov

12  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
13

14                  UNITED STATES DISTRICT COURT

15              FOR THE CENTRAL DISTRICT OF CALIFORNIA

16  UNITED STATES OF AMERICA,          No. ED CR 15-00093-JGB

17           Plaintiff,                GOVERNMENT'S SUPPLEMENTAL POSITION
                                       REGARDING SENTENCING; VICTIM
18               v.                    STATEMENTS

19  ENRIQUE MARQUEZ, JR.,              Hearing Date: October 23, 2020
                                       Hearing Time: 9:00 a.m.
20           Defendant.                Location:     Courtroom of the
                                                     Hon. Jesus G.
21                                                   Bernal

22

23       The United States of America, by and through its counsel of

24  record, hereby submits its supplemental position regarding sentencing

25  for defendant Enrique Marquez, Jr.

26       The government's position regarding sentencing is based on this

27  supplemental position regarding sentencing and exhibits hereto (filed

28  concurrently herewith under seal); the government's opposition to

1  defendant's motion to withdraw his guilty plea, exhibits thereto, and

2  corresponding proceedings; the government's previously-filed

3  sentencing memorandum and exhibits thereto; the victims' statements

4  and allocution; the United States Probation Office's Presentence

5  Investigation Report and recommendation letter; the government's

6  objections to the Presentence Investigation Report; the plea

7  agreement; the files and records in this case; and such further

8  evidence and argument as the Court may permit.

9  Dated: October 15, 2020          Respectfully submitted,

10                                   TRACY L. WILKISON
                                     Attorney for the United States,
11                                   Acting Under Authority Conferred by
                                     28 U.S.C. § 515
12
                                     CHRISTOPHER D. GRIGG
13                                   Assistant United States Attorney
                                     Chief, National Security Division
14

15                                    */s/ Melanie Sartoris*
                                     CHRISTOPHER D. GRIGG
16                                   MELANIE SARTORIS
                                     JULIUS J. NAM
17                                   Assistant United States Attorneys

18                                   Attorneys for Plaintiff
                                     UNITED STATES OF AMERICA
19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM....................1

I.    INTRODUCTION..................................................1

II.   THE GOVERNMENT'S SENTENCING GUIDELINES CALCULATIONS ARE
      CORRECT......................................................3

III.  DEFENDANT'S VARIANCE AND DEPARTURE REQUESTS ARE UNWARRANTED....8

      A.    Defendant's Criminal History Category Is Not
            Overstated............................................8

      B.    Downward Departure for "Aberrant Behavior" Does Not
            Apply................................................10

      C.    Defendant Is Not Entitled to a Mitigating Role
            Adjustment...........................................11

      D.    Defendant Is Not Entitled to Any Reduction in Offense
            Level for "Substantial Assistance"...................13

IV.   DEFENDANT'S § 3553(A) ARGUMENTS DO NOT SUPPORT A SENTENCE
      LOWER THAN 25 YEARS' IMPRISONMENT AND LIFETIME SUPERVISION....14

      A.    The Nature and Seriousness of the Offenses Justifies a
            300-Month Sentence...................................15

      B.    Defendant's History and Characteristics Warrant a
            Substantial Sentence.................................17

      C.    A 25-Year Sentence is Consistent with Sentencing in
            Terrorism Conspiracy Cases...........................18

V.    CONCLUSION...................................................22

i

1

**TABLE OF AUTHORITIES**

DESCRIPTION                                                      PAGE

2

3 **Cases**

4 United States v. Abu Ali, 528 F.3d 210 (4th Cir. 2008)............. 22

5 United States v. Awan, 607 F.3d 306 (2d Cir. 2010)........... 6, 7, 8

6 United States v. Chandia, 675 F.3d 329 (4th Cir. 2012)............. 7

7 United States v. Diaz, 884 F.3d 911 (9th Cir. 2018)............... 11

8 United States v. Dickey, 924 F.2d 836 (9th Cir. 1991)............. 11

9 United States v. El-Mezain, 664 F.3d 467 (5th Cir. 2011)........... 7

10 United States v. Fairless, 975 F.2d 664 (9th Cir. 1992)........... 11

11 United States v. Garey, 546 F.3d 1359 (11th Cir. 2011)............. 5

12 United States v. Haften, 881 F.3d 543 (7th Cir. 2018).............. 7

13 United States v. Jayyousi,

14   657 F.3d 1085 (11th Cir. 2011)...................... 6, 7, 9, 22

15 United States v. Meskini, 319 F.3d 88 (2d Cir. 2003)............ 4, 9

16 United States v. Pena, 930 F.2d 1486 (10th Cir. 1991)............. 11

17 United States v. Ressam, 679 F.3d 1069 (9th Cir. 2012).... 5, 8, 9, 22

18 United States v. Russell, 870 F.2d 18 (1st Cir. 1989)............. 11

19 United States v. Siddiqui, 699 F.3d 690 (2d Cir. 2012)............. 5

20 United States v. Takai, 941 F.2d 738 (9th Cir. 1991)............. 11

21 United States v. Tankersley, 537 F.3d 1100 (9th Cir. 2008)......... 4

22 United States v. Wright, 747 F.3d 399 (6th Cir. 2014)............. 5

23 **Statutes**

24 18 U.S.C. § 1001.................................................. 19

25 18 U.S.C. § 2332b(g)(5)......................................... 5, 8

26 18 U.S.C. § 2339A............................................... 5, 19

27 18 U.S.C. § 2339B................................................ 19

28 18 U.S.C. § 3553(a)........................................... passim

ii

## TABLE OF AUTHORITIES

DESCRIPTION                                                                 PAGE

18 U.S.C. § 371...............................................19

18 U.S.C. § 3771...........................................17, 23

18 U.S.C. § 842...............................................19

18 U.S.C. § 844(i)............................................19

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No.

  104-132, § 730, 110 Stat. 1214, 1303...............................4

Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No.

  103-322, § 12004, 108 Stat. 1796, 2022...........................4

**Other Authorities**

U.S.S.G. § 3A1.4.........................................passim

U.S.S.G. § 3B1.2...........................................11, 13

U.S.S.G. § 3E1.1..............................................14

U.S.S.G. § 5A.................................................3

U.S.S.G. § 5H1.4..............................................18

U.S.S.G. § 5K1.1...........................................13, 14

iii

## GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM

**I.   INTRODUCTION**

The government's and Probation Office's recommended sentence of 25 years' imprisonment is appropriate and sufficient but not greater than necessary to meet the goals of sentencing in 18 U.S.C. § 3553(a).  Defendant attempts to side-step the terrorism enhancement clearly applicable to his crimes, downplay the seriousness of his actions, and skirt that his actions contributed to the mass killing and injuring of innocent people in San Bernardino just a few years later.  Despite agreeing to a base offense level of 43 in the Plea Agreement, defendant contorts arguments and facts to ask for a near-time-served sentence, which is unwarranted under 18 U.S.C. § 3553 and a massive departure from the Sentencing Guidelines, no matter how they or defendant's criminal history category are calculated.

Defendant argues that the government and Probation Office seek to hold him responsible for the crimes of the San Bernardino killers in 2015, in particular defendant's co-schemer Rizwan Farook.  Not so. If defendant were charged with the multiple crimes arising from that mass murder, he would be eligible for the death penalty and face a minimum life sentence.  Instead, the government seeks to hold defendant responsible for his own crimes.

Defendant's actions were extremely dangerous and his crimes of conviction are extremely serious.  They include providing semi-automatic weapons and explosives to a person defendant admits he knew to be motivated by anti-American and violent extremist ideologies, and plotting with that person to kill large numbers of innocent people, including college students, motorists, and first responders. And the undeniable truth remains: if defendant had not illegally

purchased two assault weapons for a terrorist, that terrorist and his wife would not have used those firearms to murder 14 people and wound 22 survivors.

Defendant tries to avoid responsibility for his conduct by comparing himself to Farook and arguing he is not responsible because he is less culpable.  But relative culpability is neither exoneration nor an excuse.  He cannot hide behind the killer that he befriended, assisted, and with whom he schemed.  The fact that defendant did not participate in the San Bernardino attack does not exonerate him for his crimes.  And despite his lack of prior convictions, the facts of this case reveal another disturbing truth: where defendant goes, serious federal crimes follow, including illegal weapons purchases, conspiracy to commit terrorist attacks, and immigration fraud. Worse, defendant's offenses are crimes of enablement and facilitation, helping and encouraging others to violate federal law.

The government strongly disagrees with defendant's suggestion that the Court should decline to apply the terrorism enhancement clearly applicable to his crimes as well as with defendant's § 3553(a) arguments.  Defendant essentially argues for a 17-level variance from the government's and Probation Office's recommended sentence of 300 months (which itself is far below the guidelines range of a life sentence, and an even greater variance from the applicable guidelines if the offense level was not capped at level 43).  It is also a 17-level variance from the base offense level defendant agreed to in the Plea Agreement, even if the Court were to decline to apply the terrorism enhancement and even if defendant's criminal history category was calculated at level I.  Neither defendant's offenses and history nor a careful comparison of

1  defendant's case with other terrorism cases supports the 20-year

2  reduction that defendant seeks.

3  **II.   THE GOVERNMENT'S SENTENCING GUIDELINES CALCULATIONS ARE CORRECT**

4          As defendant agreed in his Plea Agreement and as set forth in

5  the government's sentencing brief and its objections to the PSR,[1] the

6  appropriate base offense level in this case is 43.  Additionally, as

7  the government's sentencing brief and the PSR discuss, the terrorism

8  enhancement clearly applies.[2]  The terrorism enhancement's 12-level

9  increase results in an adjusted offense level of 55 and a total

10 offense level of 52, with a 3-level reduction for acceptance of

11 responsibility.  Because this is one of the "rare cases" in which an

12 offense level greater than 43 results from the application of the

13 guidelines, the "offense level of more than 43 is to be treated as an

14 offense level of 43."  U.S.S.G. § 5A cmt. n.2.  Thus, defendant's

15 offense level is correctly calculated at 43, and his criminal history

16 category is correctly calculated as VI.

17         The terrorism enhancement was adopted by the Sentencing

18 Commission at Congress's express direction.  In 1994, Congress

19 _____

20        [1] The government's sentencing brief and objections to the PSR
   also explain why the San Bernardino terrorist attack is relevant
21 conduct in this case.  The government will not repeat those arguments
   here, but notes that whether or not it is considered relevant conduct
22 has no bearing on the sentencing guidelines calculation in this case.
   Also, even if it is not relevant conduct, which it is, it is still
23 appropriate for the Court to consider under Section 3553(a).

24        [2] It is worth noting, however, that a base offense level of 43
   supports a life sentence, whether or not the 12-level terrorism
25 enhancement applies and whether or not defendant's criminal history
   category is level I or VI.  Even if, despite defendant's efforts to
26 withdraw his guilty plea and minimize his conduct in his sentencing
   paper, the Court were to provide a 3-level reduction for acceptance
27 of responsibility and declined to apply the terrorism enhancement,
   the total offense level would be 291-365 months' imprisonment with a
28 criminal history category of I, and 360-life with a criminal history
   category of VI.  Under any scenario, defendant's requested 60-month
   sentence is drastically and unjustifiably below the guidelines.

instructed the Commission to "provide an appropriate enhancement" for certain terrorist offenses.  Violent Crime Control and Law Enforcement Act of 1994, Pub. L. No. 103-322, § 12004, 108 Stat. 1796, 2022.  In response, the Commission adopted an enhancement that provided for a 12-level increase in the offense level and a criminal history category of VI.  U.S.S.G. § 3A1.4(a)(1995).  Congress then directed the Commission to expand the application of that provision to apply to all federal crimes of terrorism.  See Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, § 730, 110 Stat. 1214, 1303; see also H.R. Rep. No. 104-518, at 123 (1996) (Conf. Rep.) (explaining that this provision was enacted "to expand the scope of the [terrorism] enhancement").

"Congress wanted to impose a harsher punishment on any individual who committed an offense that involved or intended to promote one of the enumerated terrorist acts and intended, through that offense, to influence the conduct of others." United States v. Tankersley, 537 F.3d 1100, 1113 (9th Cir. 2008).  The Commission promulgated the current version of the terrorism enhancement, intending to have it apply "broadly" to terrorism crimes.  U.S.S.G. app. C, amend. 565 (1997).  The enhancement and its application notes collectively reflect a determination by Congress and the Sentencing Commission that "an act of terrorism represents a particularly grave threat because of the dangerousness of the crime and difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time." United States v. Meskini, 319 F.3d 88, 92 (2d Cir. 2003); see also United States v. Ressam, 679 F.3d 1069, 1090-91 (9th Cir. 2012)

4

1  (en banc) (outlining rationales supporting longer sentences for

2  terrorism offenses).

3       Section 3A1.4 of the Sentencing Guidelines increases a

4  defendant's offense level by 12 levels and elevates his criminal

5  history to Category VI if the offense is "a felony that involved, or

6  was intended to promote, a federal crime of terrorism."  U.S.S.G.

7  § 3A1.4.  For purposes of § 3A1.4, "'federal crime of terrorism' has

8  the meaning given that term in 18 U.S.C. § 2332b(g)(5)."  U.S.S.G.

9  § 3A1.4 cmt. n.1.  Defendant does not dispute that his offense of

10 conviction in Count 1, 18 U.S.C. § 2339A(a), is a "federal crime of

11 terrorism" listed in 18 U.S.C. § 2332b(g)(5).  Rather, he argues the

12 Court should decline to apply the terrorism enhancement because

13 defendant was not truly motivated by international terrorism or

14 violent ideology when he committed the crimes in the same way as his

15 co-schemer Rizwan Farook.  (See generally Def.'s Sentencing Position

16 at 33-43.)

17      Not only do defendant's self-serving comments now belie the

18 substantial evidence in this case, including his descriptions to

19 others of having been involved in terrorist plotting, his personal

20 motive is immaterial.  Section 3A1.4(a)'s application does not

21 require a finding that the defendant was personally motivated by a

22 desire to promote a federal crime of terrorism.  Rather, the

23 enhancement applies because defendant committed federal offenses that

24 were calculated "to influence or affect the conduct of government by

25 intimidation or coercion, or to retaliate against government

26 conduct."  United States v. Garey, 546 F.3d 1359, 1361 (11th Cir.

27 2011).  Calculation does not require "[l]ong-term planning."  United

28 States v. Wright, 747 F.3d 399, 408 (6th Cir. 2014); see also United

States v. Siddiqui, 699 F.3d 690, 709 (2d Cir. 2012). "Nor is it necessary that influencing the government be the defendant's ultimate or sole aim." Wright, 747 F.3d at 408 (citing United States v. Jayyousi, 657 F.3d 1085, 1114-15 (11th Cir. 2011); and United States v. Awan, 607 F.3d 306, 317 (2d Cir. 2010)). The calculation requirement focuses on whether the offense was planned or intended to achieve a stated object, regardless of the particular motive of the defendant. See Awan, 607 F.3d at 317. By way of example, "[a] hired assassin who kills a political leader at the behest of a terrorist organization can hardly disclaim that his crime was calculated to influence the conduct of government simply because he was motivated by greed rather than politics." Id. at 318.

Defendant's own descriptions of his conspiracy establish that, at a minimum, defendant knew Rizwan—for whom he purchased the weapons and explosive powder, and with whom he conspired—held anti-American and violent radical beliefs and had such intent when he stockpiled weapons, gear, ammunition, explosive powder, and planned with defendant to kill people. As with the assassin motivated by greed described in Awan, even if defendant were motivated by his friendship for Rizwan or his admiration for weapons (see, e.g., Def.'s Sentencing Position at 13-14, 31, 45), the enhancement still applies because it remains true factually and objectively that defendant aided a terrorist by providing weapons and explosives, and participated in plans to kill innocent people. The government need only prove that the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct. See Awan, 607 F.3d at 316-18 (holding that government need not show defendant was personally motivated to

influence government, only that he intended to promote a crime calculated to have such an effect); United States v. Haften, 881 F.3d 543, 545 (7th Cir. 2018) (affirming that the terrorism adjustment applied, stating "[a]ll that matters is that [defendant] did, in fact, commit a crime calculated to retaliate against the government."); Jayyousi, 657 F.3d at 1114-15 (holding that terrorism adjustment, § 3A1.4, applies when purpose of defendants' activity is calculated to promote a terrorism crime regardless of defendants' personal motivations); accord United States v. El-Mezain, 664 F.3d 467, 571 (5th Cir. 2011) (citing with approval Awan and Jayyousi); see also United States v. Chandia, 675 F.3d 329, 340-41 (4th Cir. 2012) (affirming application of terrorism adjustment where the court reasonably inferred that defendant intended to advance the terrorist organization's purpose based on defendant's knowledge about the terrorist organization).  That standard is more than met here.

     As the government's April 2018 sentencing position details, defendant boasted about his involvement in terrorist plotting to other individuals online.  (See Gov't's Sentencing Position at 4-21, Exs. 15-24.)  His latest such admission was in November 2015, when he posted on Facebook: "No one really knows me.  I lead multiple lives and I'm wondering when its all going to collapse on M[e]." (Id. at 19, Ex. 24.)  Defendant continued, "My life turned ridiculous" "[i]nvolved in terrorist plots, drugs, antisocial behavior, marriage, might go to prison for fraud, etc." (Id.)  There is no reason to credit defendant's apparent position at sentencing that, although he was indeed involved in "drugs, antisocial behavior, marriage" and "fraud," the only thing on his list that is untrue was his involvement in "terrorist plots."

7

Even if defendant did not devise the precise plans for which he plead guilty in Count 1 until a few months after he purchased the two semi-automatic firearms for Farook (see Def.'s Sentencing Position at 15-20), the purchase was nonetheless in furtherance of their plotting to commit terrorist attacks that ultimately culminated in picking innocent college students, commuters, and first responders as targets. In May or June of 2015, defendant admitted to a witness that he once was "becoming radical" and had purchased "guns" "to hurt people." (See Gov't's Opp'n to Def.'s Mot. to Withdraw Guilty Plea, GEX 1276.) When investigators asked defendant about a spreadsheet they had recovered from Farook's thumb drive under a tab labeled "marriage" that detailed weapons purchases in 2011, including ammunition and shooting expenses, defendant admitted in writing that he was "aware they would be used in a future terrorist attack." (See Gov't's Sentencing Position at 10-11, Ex. 5 at 1.) Therefore, even though the crime charged in Count 2 is not enumerated in 18 U.S.C. § 2332b(g)(5)(B), an upward departure is warranted, because the crime "was calculated to influence or to affect the conduct of government by intimidation or coercion, or to retaliate against government conduct." U.S.S.G. § 3A1.4 cmt. n.4; Awan, 607 F.3d at 315.

**III. DEFENDANT'S VARIANCE AND DEPARTURE REQUESTS ARE UNWARRANTED**

Defendant advances multiple arguments in support of his request for a 60-month sentence, but none justify the dramatic variances and departures that he seeks.

**A. Defendant's Criminal History Category Is Not Overstated**

Because the crimes of terrorism are designed to "intimidate this nation and the world," Ressam, 679 F.3d at 1090, and "represents a particularly grave threat" to the security and well-being of the

8

1    nation, Meskini, 319 F.3d at 92, the application of the terrorism

2    enhancement properly elevates defendant's criminal history category

3    to VI.  Defendant has not offered a persuasive justification for

4    departure from that category.

5         The Ninth Circuit has declared that "[t]errorists, even those

6    with no prior criminal behavior, are unique among criminals in the

7    likelihood of recidivism, the difficulty of rehabilitation, and the

8    need for incapacitation," and the seriousness of a terrorism offense

9    is properly "taken into account in the criminal statutes and in the

10   Sentencing Guidelines."  Ressam, 679 F.3d at 1091 (citing Jayyousi,

11   657 F.3d at 1117).  Thus, in Ressam where the guidelines range was 65

12   years to life, the Ninth Circuit vacated a 22-year sentence, for

13   substantive unreasonableness, for a defendant convicted at trial of

14   terrorism conspiracy and other crimes.  Id. at 1097.

15        As the Second Circuit explained in Meskini (a terrorism case

16   where the defendant had no prior criminal record), "Congress and the

17   Sentencing Commission had a rational basis for creating a uniform

18   criminal history category for all terrorists under § 3A1.4(b),"

19   because even terrorists without criminal history have a unique

20   capacity for recidivism and pose challenges to rehabilitation.  319

21   F.3d at 92.  The Second Circuit further held that downward departures

22   that negate the Sentencing Commission's criminal history category

23   elevation should be used only "in exceptional cases," as "the

24   Guidelines are in no way irrational in setting the default for

25   criminal history at a very high level."  Id.

26        Defendant is far from the kind of "exceptional case" that might

27   warrant a departure for an over-represented criminal history.  By his

28   own admission in various pleadings in this case, defendant engaged in

9

five years of criminal activities until his arrest in 2015: terrorism conspiracy; fraudulent acquisition of firearms; and visa and marriage fraud.[3]  Although those crimes were charged together in the indictment, they—by defendant's own assertions—represent different clusters of crimes that covered nearly the entire span of defendant's adulthood.  Now, nearly five years after his arrest, even after pleading guilty, defendant appears to minimize the seriousness of his participation in a terrorism conspiracy by characterizing it as "brief, speculative, vague, and hypothetical discussions" that "never evolved to . . . a 'plan'" and lacked "corroborating information." (Def.'s Sentencing Position at 18, 19.)  On defendant's history and record before this Court, defendant cannot claim to be an exceptional defendant for whom that rare departure from the criminal history category set by the terrorism enhancement is warranted.

**B.   Downward Departure for "Aberrant Behavior" Does Not Apply**

For the same reason, defendant's claim that the Court should depart downward for "aberrant behavior" fails.  If participation in a conspiracy to commit two separate terrorist acts in Riverside City College ("RCC") and SR-91 can ever be an "aberrant act" that warrants a downward departure, that argument is foreclosed by defendant's own assertion that his illegal purchase of the two firearms that preceded the terrorism conspiracy had nothing to do with the conspiracy. Defendant's commission of Counts One and Two, followed by marriage

---

[3] In addition to the guilty pleas to the terrorism conspiracy and false statement in the acquisition of firearms counts, defendant has acknowledged that he began engaging in visa and marriage fraud from November 2014 through December 2015 until defendant was arrested in this case.  (See Def.'s Motion to Withdraw Guilty Plea at 41-42; Declaration of Enrique Marquez in support of Def.'s Motion to Withdraw Guilty Plea ¶¶ 20-22, 28.)

1   and visa fraud two years later, can in no way be considered an

2   "atypical" behavior that this Court can regard with leniency.  United

3   States v. Russell, 870 F.2d 18, 20 (1st Cir. 1989).

4        The cases that defendant cites involved defendants who received

5   lenient sentences after committing single criminal acts in the

6   context of otherwise positive and upstanding life histories.  See,

7   e.g., United States v. Fairless, 975 F.2d 664, 667 (9th Cir. 1992)

8   (single spontaneous and "crazed" act to commit bank robbery in

9   depressive and suicidal state was "aberrant behavior" that justified

10  departure); United States v. Takai, 941 F.2d 738, 741 (9th Cir. 1991)

11  (downward departure for first-time smugglers who bribed immigration

12  officials in a single act of aberrant behavior); United States v.

13  Pena, 930 F.2d 1486, 1494 (10th Cir. 1991) (defendant was a mother

14  with "long-term employment," "unique family responsibility," and no

15  criminal history who committed a drug trafficking offense).  Cf.

16  United States v. Dickey, 924 F.2d 836, 837 (9th Cir. 1991) (while

17  "single acts of aberrant behavior" may justify downward departure, it

18  was not clear whether defendant's counterfeit currency crime was

19  sufficiently atypical).  In contrast, defendant's criminal behavior

20  spanned five years and was by no means a single act of aberrant

21  behavior warranting a downward departure or variance.

22       C.   Defendant Is Not Entitled to a Mitigating Role Adjustment

23       Defendant fails to meet his burden to show that the nature of

24  his participation in his terrorism conspiracy rendered him

25  "substantially less culpable than the average participant" such that

26  he should be accorded a reduction in his offense level.  U.S.S.G.

27  § 3B1.2(b) & cmt. n.3(A), (C) (emphasis added); United States v.

28  Diaz, 884 F.3d 911, 914 (9th Cir. 2018).  Defendant asks for a

                                    11

minimal-role, four-level adjustment, arguing that he was a younger
person under the strong influence of his co-conspirator when
defendant participated in the conspiracy, and because he lacked
"decision-making authority, independent discretion, or influence over
Farook." (Def.'s Sentencing Position at 54.) But defendant's views
of the conspiracy that he now essentially disavows as having taken
place are belied by his own descriptions of the conspiracy to the FBI
in December 2015 and in the preceding years to other individuals.

The government's April 2018 sentencing position (Dkt. 97)
details that defendant was a full, willing, and motivated participant
of the conspiracy who not only provided the agreement necessary for
the conspiracy to attack RCC and SR-91, but also co-designed the
attacks with Farook (PSR ¶ 14), purchased the two firearms and
ammunition to facilitate the attacks (PSR ¶ 15), researched bomb-
making and obtained explosive powder and other bomb-making materials
(PSR ¶ 16), and visited RCC and SR-91 to sketch out how he and Farook
would attack the two locations to maximize casualties (PSR ¶¶ 17-20).
Defendant later boasted about his involvement in terrorist plotting
to other individuals online, detailing at times the particular plans
he participated in making to commit terrorist attacks. (See Gov't's
Sentencing Position at 4-21, Exs. 15-24.) He admitted his
involvement again in November 2015. (Id. Ex. 24.) Defendant even
told a witness in person in 2015 that defendant had had some "dark
times . . . becoming radical" and had purchased "guns" with Farook
because they "wanted to hurt people"—an undeniable reference to the
conduct underlying the terrorism conspiracy and straw-purchase
counts. (See Gov't's Opp'n to Def.'s Mot. to Withdraw Guilty Plea,
GEX 1276.)

Defendant's actual, admitted conduct in furtherance of the conspiracy satisfies at least four of the five non-exhaustive factors in the Guidelines' commentary to § 3B1.2.  Unlike low-level drug couriers or getaway drivers for whom courts have accorded minor or minimal roles, defendant's self-description of his participation in the conspiracy shows that: (1) he "understood the [full] scope and structure" of the conspiracy; (2) he was integral "in planning or organizing the criminal activity"; (3) he "exercised decision-making authority or influenced the exercise of decision-making authority" by researching bomb-making, facilitating purchases of firearms and ammunition, and strategizing with Farook to maximize casualties when they would commit the attacks; and (4) his "participation in the commission of the criminal activity" was full and co-equal in "nature and extent" with Farook.  See U.S.S.G. § 3B1.2 cmt. n.3(C).

Accordingly, defendant fails to establish that he was substantially less culpable than Farook or the average participant in a similar conspiracy.

### D. Defendant Is Not Entitled to Any Reduction in Offense Level for "Substantial Assistance"

Defendant is wrong to suggest that the Court can effectively grant a § 5K1.1 substantial assistance departure without the government's motion by assessing defendant's "cooperation" with law enforcement in a § 3553(a) analysis.  The government has not filed a § 5K1.1 motion in this case, nor will it file one.  Defendant's request is improper.

While defendant spoke with the FBI at length following the December 2, 2015 terrorist attack, made admissions to his crimes, and described his history with Rizwan Farook, the government has not

1   presented to this Court that defendant has provided sufficient

2   "substantial assistance in the investigation or prosecution of

3   another person who has committed an offense." U.S.S.G. § 5K1.1.  A

4   sentencing benefit under "substantial assistance" is not available

5   for admissions of defendant's own criminal conduct, however fulsome

6   those admissions may be; such admissions are captured by the

7   acceptance of responsibility provisions of U.S.S.G. § 3E1.1.

8        In the absence of a § 5K1.1 motion from the government, a basis

9   for granting a variance or departure for substantial assistance is

10  not before the Court.  Defendant cannot seek to circumvent the text

11  and intent of the Guidelines by asking the Court to speculate on the

12  nature and value of the information defendant provided to the

13  government in a § 3553(a) analysis.  The government has not submitted

14  a § 5K1.1 motion because it has determined that defendant has not

15  merited such a motion.  U.S.S.G. § 5K1.1.  Despite the absence of

16  such a motion, defendant urges the Court to depart downward by

17  speculating on the nature and value of defendant's assistance.  Any

18  such departure would be without factual or legal basis.

19  **IV.  DEFENDANT'S § 3553(A) ARGUMENTS DO NOT SUPPORT A SENTENCE LOWER
        THAN 25 YEARS' IMPRISONMENT AND LIFETIME SUPERVISION**

20

21       The government's and Probation Office's recommended sentence of

22  25 years' imprisonment is appropriate and sufficient but not greater

23  than necessary to meet the goals of sentencing as provided in 18

24  U.S.C. § 3553(a).  (See Gov't's Sentencing Position at 38-46.)  The

25  government strongly disagrees with defendant's § 3553(a) arguments,

26  particularly regarding the nature and circumstances of his offenses,

27  defendant's history and characteristics, and the need for unwarranted

28  sentencing disparities.  Defendant seeks what amounts to a 17-level

variance from the government's and the Probation Office's recommended sentence of 300 months (which itself is below the guidelines range of a life sentence) in requesting a sentence of 5 years.  Consideration of the § 3553(a) factors do not support the 20-year reduction that defendant seeks.

### A. The Nature and Seriousness of the Offenses Justifies a 300-Month Sentence

The government has already provided the Court a full description of the nature and circumstances of defendant's offense conduct in the government's April 2018 sentencing brief and its opposition to defendant's motion to withdraw his guilty plea.  As the Court is now well aware, defendant met with the FBI on December 6-17, 2015, and made comprehensive and meticulous admissions of his criminal conduct with Rizwan Farook.  (See Gov't's Opp'n to Def.'s Mot. to Withdraw Guilty Plea, GEX 1-332.)  During those twelve days of interviews, defendant described in detail his consumption of Islamic extremism, his research into methods of terrorism and weapons of mass assault, his acquisition of firearms, explosives, and explosives paraphernalia with Farook, and the specific plans that defendant and Farook made from 2011 through November 2012 to commit terrorist attacks at RCC and SR-91.  (Id.)  During the same meetings with the FBI, defendant voluntarily accompanied agents to the RCC campus and specific locations on SR-91 to identify and describe where and how he and Farook intended to commit terrorist attacks so as to maximize human casualties. (Id. GEX 232-55; Gov't's Sentencing Position, Exs. 1, 2 (videos of defendant's visits to RCC and SR-91 with law enforcement).)

1    During and since those interviews, the FBI—in conjunction with

2  other law enforcement agencies—compiled evidence corroborating

3  defendant's criminal conduct, some of which appears in exhibits to

4  the government's sentencing position.  (See Gov't's Sentencing

5  Position, Exs. 3-33.)  The corroborating evidence includes

6  defendant's online statements to other individuals as recently as

7  November 2015, less than a month before his arrest in this case.

8  (Id. Exs. 15-24.)

9    Despite the overwhelming strength of evidence and the

10  seriousness of the offense conduct, defendant inaccurately minimizes

11  his plan as "brief, speculative, vague, and hypothetical

12  discussions," which "never evolved to such a degree that they might

13  even be characterized as a 'plan,'" and that the "details of the

14  plans were only set forth by [defendant] to the federal agents [in

15  December 2015] as hypothetical inferences."  (Def.'s Sentencing

16  Position at 18, 19.)  This revisionist rhetoric stands in stark

17  contrast to the lengthy, detailed, and repeated statements he gave to

18  the FBI, as well as to the statements that defendant made to multiple

19  individuals, including a witness to whom defendant said in 2015 that

20  he was "becoming radical" and had purchased "guns" with Farook

21  because they "wanted to hurt people."  (Gov't's Opp'n to Def.'s Mot.

22  to Withdraw Guilty Plea, GEX 1276.)  As the Court found when denying

23  defendant's motion to withdraw his guilty plea, defendant "lacks

24  credibility as a witness," and his words alone—whether in any

25  declaration or pleadings—cannot be credited.  (Order Denying Def.'s

26  Mot. to Withdraw Guilty Plea (Dkt. 268) at 3.)

27    Defendant's provision of weapons and explosives, and terrorist

28  plotting with Rizwan Farook, had devastating consequences on December

16

2, 2015, when Rizwan Farook and Tashfeen Malik used the weapons to kill 14 people and injure, terrorize, and traumatize countless others, leaving behind an IED made with defendant's explosive powder.[4]

The clear, incontrovertible record before this Court demonstrates the seriousness of defendant's conduct and the justification for a 25-year sentence.

## B.   Defendant's History and Characteristics Warrant a Substantial Sentence

Despite his high intellectual ability, defendant has taken pains to present a portrait of himself as an unthinking, gullible follower who lacked agency, guidance, and mental fortitude, but nothing in defendant's personal history meaningfully mitigates—much less counteracts—against the 25-year sentence warranted to achieve the goals of sentencing.  While there appears to have been health and relationship difficulties in defendant's life, that is so for countless people who do not engage in federal crime, let alone repeatedly.  Nothing in defendant's history and characteristics is so

///

///

---

[4] The government filed statements of some of the victims publicly and under seal as lettered Exhibits to its sentencing position paper filed in April 2018.  The government herewith files additional statements obtained to date under seal as Exhibits AA-CC, and requests the Court to consider them because they are relevant to the factors the Court is to consider under § 3553(a), and pursuant to the Crime Victims' Rights Act, codified at 18 U.S.C. § 3771.  As discussed in the government's sentencing position at 35-38, victim statements speak to the nature and circumstances of the offense and directly address "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  See 18 U.S.C. § 3553(a).

extraordinarily mitigating that it justifies defendant's repeated criminal behavior and the dramatic sentencing windfall he seeks.[5]

Defendant's life experiences may help explain defendant's motivations for forming and maintaining his relationship with Rizwan Farook and for engaging in immigration fraud.  But it remains the case that defendant willingly, resourcefully, and persistently committed the offenses of conviction, as well as the visa and marriage fraud offenses, over a five-year period, during which defendant held multiple jobs, exhibited high levels of intelligence and social functioning, and showed keen awareness of the criminality of his actions.  While the government in no way would minimize the challenges that individuals with difficulties in upbringing and mental health face each day, defendant's history and characteristics are not of particularly unusual nature—in comparison to other defendants who appear before this Court for sentencing—to warrant a variance from the already below-guidelines sentence the government and Probation recommended.

**C.   A 25-Year Sentence is Consistent with Sentencing in Terrorism Conspiracy Cases**

Contrary to defendant's assertions, imposing the government's recommended sentence of 25 years—rather than granting the

---

[5] In an apparent argument for mitigation, defendant claims prior to arrest "he was consuming large quantities of alcohol, illegal drugs, and over-the-counter medications." (Def.'s Sentencing Position at 18, 19.)  Such substance abuse, however, does not justify a reduction in his sentence.  As recognized by the Sentencing Commission, "[d]rug or alcohol dependence or abuse ordinarily is not a reason for a downward departure.  Substance abuse is highly correlated to an increased propensity to commit a crime."  U.S.S.G. § 5H1.4.  Instead of supporting a reduction in sentence, the Sentencing Commission recommends conditions of supervised release that include substance abuse treatment.  Id.  The Probation Office's and the government's sentencing recommendations are in accord.

extraordinary variance requested by defendant—would avoid unwarranted sentencing disparities.

Defendant's reliance on his summary of 76 terrorism-related cases across the United States is greatly misplaced. (<u>See</u> Def.'s Sentencing Position at 109-13, Ex. J.)  Those 76 cases represent an assortment in which defendants variously pleaded to one or more charges of 18 U.S.C. §§ 371, 842, 844(i), 1001, 2339A, and 2339B. For the reasons outlined below, many of those cases are not analogous here:

- In at least 10 cases, the defendants received dramatically low sentences, despite the applicability of the terrorism enhancement, because the defendants cooperated with the government and, in some cases, testified against other defendants, as evident from the pleadings publicly accessible on their dockets. (<u>See, e.g.</u>, <u>United States v. Ahmed</u>, 0:09-CR-50 (D. Minn.) (36 months); <u>United States v. Doe</u>, 1:14-CR-612 (E.D.N.Y.) (24 months); <u>United States v. Esse</u>, 0:14-CR-369 (D. Minn.) (probation).)

- In at least 9 cases, the defendants pleaded to either misdemeanors, § 371 charges (which come with 5-year maximum sentences), or § 1001 charges (which come with 8-year maximum sentences in terrorism cases). (<u>See, e.g.</u>, <u>United States v. Abdulkadir</u>, 0:16-CR-02 (D. Minn.) (probation; misdemeanor); <u>United States v. Abood</u>, 3:15-CR-256 (N.D. Tex.) (48 months; § 1001); <u>United States v. Blair</u>, 5:15-CR-40031 (D. Kan.) (15 months; § 371); <u>United States v. Coffman</u>, 3:15-CR-16 (E.D. Va.) (54 months; § 1001); <u>United States v. Kodaimati</u>, 3:15-CR-1298 (S.D. Cal.) (96 months; § 1001).)

19

- In at least 10 cases, a significant portion of the defendants' conduct involved raising funds for foreign terrorist organizations ("FTOs"), but without specific plans for violence. (See, e.g., United States v. Abdullahi, 1:14-CR-230 (E.D. Va.) (144 months); United States v. Hor Aki & Amera Aki, 3:10-CR-251 (N.D. Ohio) (75 & 40 months); United States v. Yusuf, 3:10-CR-4551 (S.D. Cal.) (96 months); United States v. Hassan, 0:10-CR-187 (D. Minn.) (120 months).)

- In at least 10 cases, the defendants pleaded to only one count of 18 U.S.C. § 2339B, which at the time of those offenses carried a statutory maximum sentence of 15 years, and the defendants received the maximum or near-maximum sentences. (See, e.g., United States v. El-Mezain, 3:04-CR-240 (N.D. Tex.) (180 months); United States v. Saadeh, 2:15-CR-558 (D.N.J.) (180 months); United States v. Teausant, 2:14-CR-87 (E.D. Cal.) (144 months).)

- In many other cases where the defendants received lower sentences despite § 2339B convictions, the relevant factors were significantly different from this case.  (See, e.g., United States v. Van Haften, 3:15-CR-37 (W.D. Wisc.) (120 months after a competency determination process); United States v. Musse, 0:15-CR-49 (D. Minn.) (120 months for a defendant who was defendant no. 6 (out of the seven charged) and substantially less culpable); United States v. Khweis, 1:16-CR-143 (E.D. Va.) (240 months for a defendant who traveled to join ISIS but quickly returned upon regret); United States v. Young & Dakhalla, 1:15-CR-98 (N.D. Miss.) (144 & 96 months for a couple

1    who attempted to travel to join ISIS after conversion to

2    Islam).)

3         In clear contrast to the above cases, defendant's conduct

4    involved actively conspiring to commit specific acts of terrorism

5    using high-powered firearms and explosives in Riverside County to

6    incur mass casualties and purchasing two firearms as part of that

7    conspiracy.  The object and means of defendant's conspiracy were thus

8    even more serious than those defendants who agreed or attempted to

9    travel overseas to join an FTO but without specific plans to commit

10   acts of violence.  Therefore, in assessing the sentencing disparity

11   factor, the Court should compare this case specifically with more

12   egregious cases where the defendants pleaded to more than one count

13   and made specific plans to commit violent acts involving firearms and

14   explosives.  (See, e.g., United States v. Daud, 0:15-CR-49 (D. Minn.)

15   (360 months for conduct including conspiracy to commit murder);

16   United States v. Elhuzayel & Badawi, 8:15-CR-60 (C.D. Cal.) (360

17   months each for terrorism co-conspirators who plotted to travel to

18   join ISIS and discussed committing violent jihad in Orange County);

19   United States v. Elfgeeh, 6:14-CR-6147 (W.D.N.Y.) (270 months for

20   recruiting others to travel abroad for terrorism and purchasing two

21   firearms and silencers); United States v. Mohamud, 2:15-CR-95 (S.D.

22   Ohio) (264 months for plotting to kill Americans after overseas

23   travel for terrorism); United States v. Morgan, 1:14-CR-194

24   (M.D.N.C.) (243 months for terrorism conspiracy involving firearm

25   possession).)

26        When compared with the sentences imposed in analogous cases, the

27   government's recommended 300-month sentence is well within the norm

28   of sentences imposed in terrorism conspiracy cases and does not

21

represent an unwarranted sentencing disparity.  Even if defendant can point to outlier cases where defendants received substantially lower sentences for similar conduct, sentencing courts in the main have stayed close to the guidelines range (which in this case is higher than the requested 300 months).  Several courts of appeals have even vacated sentences that were reduced based on comparisons to defendants not similarly situated.  See Ressam, 679 F.3d at 1095 (22-year sentence found to be substantively unreasonable because of recidivism, danger, and sentencing disparity concerns); Jayyousi, 657 F.3d at 1117-18 (sentence of 17 years and 4 months was substantively unreasonable because sentence failed to protect the public from further crimes); United States v. Abu Ali, 528 F.3d 210, 265 (4th Cir. 2008) (30-year sentence found to be substantively unreasonable after conspiracy to inflict mass civilian casualties and assassinate public officials in the U.S., because of recidivism concerns and impermissible comparisons to other terrorism-related cases).

Accordingly, here, the particular facts of this case and the relevant § 3553(a) factors—including the grave threat that the offense conduct represents, defendant's own history, the need to deter defendant and others from similar crimes, the need to protect the public, and the need to avoid unwarranted disparities — necessitate the imposition of a 300-month sentence and lifetime supervision.

V.   **CONCLUSION**

The government respectfully requests that this Court impose the sentence recommended by the Probation Office of 300 months' imprisonment, followed by a lifetime of supervised release (with the terms and conditions recommended by the Probation Office, including

22

drug and mental health treatment), and a special assessment of $200.
The government also requests defendant be ordered to pay restitution,
in amounts to be determined at a deferred restitution hearing.  See
18 U.S.C. § 3771(6).

Dated: October 15, 2020          Respectfully submitted,

                                 TRACY L. WILKISON
                                 Attorney for the United States,
                                 Acting Under Authority Conferred by
                                 28 U.S.C. § 515

                                 CHRISTOPHER D. GRIGG
                                 Assistant United States Attorney
                                 Chief, National Security Division


                                  /s/ Melanie Sartoris
                                 CHRISTOPHER D. GRIGG
                                 MELANIE SARTORIS
                                 JULIUS J. NAM
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA